IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAMES A. COSTLOW, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | CIVIL No: 5:15-cv-00268-MTT-CHW |
| DEPARTMENT | : | |
| OF CORRECTIONS, et al., | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. § 1983 |
| Defendants | : | BEFORE THE U. S. MAGISTRATE JUDGE |

**REPORT & RECOMMENDATION**

On July 3rd, 2015, Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983. Doc. 1. Plaintiff alleges that Defendants Lockett and McLaughlin failed to protect him from an attack by an orderly on April 4th, 2015. Doc. 1, p. 5. Plaintiff alleges that the orderly threw Plaintiff's tray, threw hot coffee on him, and slammed the tray flap on Plaintiff's arm. Due to this incident, Plaintiff was hospitalized and suffered lacerations on his elbow that required stitches. *Id.* Plaintiff contends Defendants McLaughlin and Lockett violated his constitutional rights, and seeks compensatory and punitive damages. *Id.* at 6.

After a preliminary screening of Plaintiff's complaint, the Court ordered service on McLaughlin and Lockett. Docs. 7, 17. Defendants have both moved to dismiss Plaintiff's claims for failure to exhaust his administrative remedies. Doc. 19; Doc. 26. Plaintiff has filed two responses, one for each of Defendants' Motions to Dismiss. Doc. 29; Doc. 30.

Because Plaintiff failed to exhaust his available administrative remedies as to his claims against Defendant McLaughlin before he filed his complaint, it is **RECOMMENDED** that McLaughlin's Motion (Doc. 19) be **GRANTED.**

The record shows that Plaintiff did exhaust his available administrative remedies as to his claims against Defendant Lockett, by filing a timely grievance and appeal. This grievance was improperly denied on procedural grounds in clear violation of the Department of Corrections Standard Operating Procedures. Accordingly, it is **RECOMMENDED** that Lockett's Motion (Doc. 26) be **DENIED**.

## EXHAUSTION

A.   The Prison Litigation Reform Act

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). Exhaustion warrants proper compliance with deadlines and procedures because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).   This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as

those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

Because the state of Georgia provides a grievance procedure for its prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Thus, even if Plaintiff exhausted his administrative remedies after he filed his complaint, the Court cannot take action on those claims. See 42 U.S.C. § 1997e(a).

B.   Available Administrative Remedies

During the period relevant to this case, the Georgia Department of Corrections ("DOC") provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 19-3, pp. 8-16. At step

one, a prisoner wishing to file a grievance is required to file no later than ten (10) calendar days from the date he knew or should have known of the facts underlying his grievance. *Id*. at 8. The procedure allows the grievance coordinator to waive this time limit "for good cause." *Id*. The Warden must respond within forty (40) days. *Id*. at 11. If this initial grievance is rejected, the prisoner is required to appeal to the Central Office within seven (7) calendar days. *Id*. at 12. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id*.

The procedure provides for the deadlines to be waived by the grievance coordinator "for good cause." *Id.* at 8. Good cause is defined as: "A legitimate reason involving unusual circumstances that prevented the offender from timely filing a grievance or an appeal. Examples include: serious illness, being housed away from a facility covered by this procedure (such as being out on a court production order or for medical treatment)." *Id.* at 3. An inmate may file "a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally." *Id.* at 6. Disciplinary actions, including any punishment, fees, or assessments are determined to be "non-grievable." *Id.*

Inmates are limited to two active grievances at any one time. *Id.* at 7. If an inmate has more than two active grievances, the procedure states that the inmate must drop one of the outstanding active grievances being processed in order to file a new grievance. *Id.* There are three exceptions to the two active grievance limit if the grievance: (1) is filed as an emergency grievance and is determined to be an emergency grievance by the Grievance Coordinator; (2) involves allegations of physical abuse with significant injury to the inmate or sexual assault; or (3) involves an important issue of prison security or administration, such as a serious threat to life, health, or safety of any person. *Id.*

C.   Plaintiff's Version of the Facts

Plaintiff contends that Defendants McLaughlin and Lockett violated his constitutional rights by failing to protect him during his incarceration in Macon State Prison ("MSP"). Plaintiff alleges he notified McLaughlin through "house mail" that orderlies were distributing food trays during chow calls in violation of standard operating procedures ("SOP"). Doc. 1, p. 5. Plaintiff informed McLaughlin that an orderly, McCrimmon, was making threatening statements to Plaintiff and spitting in his food tray. *Id.* Plaintiff also notified Lockett that McCrimmon was a threat to him and that he feared an assault if McCrimmon was allowed to continue serving him food. Doc. 13, p. 1. On April 4, 2015, McCrimmon served Plaintiff's food tray and told Plaintiff to "enjoy white boy." *Id.* McCrimmon then dropped Plaintiff's tray and threw coffee on him. *Id.* Plaintiff states his arm "got wedged in the door" when Plaintiff attempted to block McCrimmon's assault. *Id.* With Plaintiff's arm wedged in the door, McCrimmon slammed the trap door on Plaintiff's arm, causing Plaintiff to be hospitalized and receive stitches. *Id.*

Plaintiff has filed exhibits that present a series of grievances and appeals concerning this incident. Plaintiff filed his first grievance, number 193961, on April 7th, 2015, within the ten-day filing period for the grievance. Doc. 23-1, p. 2. In this grievance, Plaintiff alleged that Lockett was "negligent" in allowing McCrimmon to serve him, and requested a formal investigation. *Id.* Plaintiff attached his own statement and a statement from Inmate Richard J. Patterson to his grievance. Doc. 23, p. 2; Doc. 23-1, p. 3-4.

Defendant McLaughlin, the Warden of Macon State Prison, denied Plaintiff's grievance number 193961 because Plaintiff had attached two additional pages in violation of a policy permitting only one attachment to a grievance. Doc. 23-2, p. 2. Plaintiff acknowledged receipt of the denial on April 17th, 2015. *Id.* On April 21st, 2015, Plaintiff appealed his denied grievance on

the grounds that he was advised by his counselor "that attaching (2) attachment forms was perfectly acceptable." Doc. 23-3, p. 2. Plaintiff also requested that Central Office remove his own witness statement so that the grievance could proceed with only one attachment. *Id.*

On April 20th, 2015, the day before Plaintiff filed his appeal of grievance 193961, Plaintiff filed another grievance, number 195131, regarding the incident on April 4th, 2015. Doc. 23-4, p. 2. In this grievance, Plaintiff stated he was advised to resubmit his grievance and once again named Defendant Lockett and the DOC as "negligent in this matter." *Id.* Plaintiff acknowledged that this grievance was being filed past the ten-day limit as required by the grievance procedures, explaining that the delay was because his first grievance was denied for having "too many witness statements attached…." *Id.* Warden McLaughlin denied grievance number 195131 on April 30th, 2015, for failure to file the grievance within the ten day filing period. *Id.* at 4.

Plaintiff appealed the denial of grievance number 195131 on May 14th, 2015. *Id.* at 3. In this appeal, Plaintiff argued that his grievance explained why the grievance was not filed within the ten-day period and that he "failed to see why this is being denied." *Id.* The Central Office reviewed Plaintiff's appeal for grievance number 195131, and on June 4th, 2015, the Central Office denied the appeal because the second grievance was not filed within ten days of the grieved incident. *Id.* at 5.

D.  Defendants' Version of the Facts

Defendants argue that Plaintiff's attempts at exhaustion failed because Plaintiff did not comply with the established grievance procedures. Doc. 19-1, p. 5; Doc. 26-1, p. 4. Defendants contest Plaintiff's claim that he was advised by a counselor that he could attach additional statements to his first grievance. To refute Plaintiff's claim, Defendants present an affidavit from Curtis Jefferies, Current Facilitator and former General Population Counselor for MSP. Aff. of

Curtis Jefferies, Doc. 25-1, p. 2. Jefferies was Plaintiff's counselor in April 2015 and met with Plaintiff that month for his quarterly contact. *Id.* In his affidavit, Jefferies states that he reviewed Plaintiff's grievance form but testifies that he "did not advise Inmate Costlow to attach additional forms because I know this is a policy violation." *Id.*

E.	Analysis

Applying the *Turner* analysis to the procedures outlined above, Warden McLaughlin is entitled to dismissal at step one because Plaintiff did not include any claims against McLaughlin in his grievance. Proper exhaustion, under the PLRA, requires an inmate to comply with all administrative steps, deadlines, and other critical procedure rules. *Woodford*, 548 U.S. at 89. A defective or untimely grievance filed by an inmate is not properly exhausted. *Id.* at 83-84. The PLRA obligates plaintiffs to include the identities of all defendants and as much relevant information as possible in the administrative grievance process. *Brown*, 212 F.3d at 1207-08. Plaintiffs are not required to identify defendants whose identities are unknown to them, however, and must simply provide information they have or reasonably can obtain. *Id.* A prisoner has the obligation to provide "all the relevant information he has, including the identity of any officials he thinks have wronged him….[b]ut a prisoner cannot…identify those whose identities are unknown to him." *Id.* at 1208-09.

1.	Claims against Defendant McLaughlin

Plaintiff acknowledges that Warden McLaughlin was not identified in either of his grievances and offers no explanation for the omission. Doc. 29, p. 2. In both of Plaintiff's grievances, Plaintiff specifically names Lockett as the responsible party. Doc. 23-1, p. 2; Doc. 23-4, p. 2. Absent from either grievance is any mention of McLaughlin or any description of his participation in the matter.

7

McLaughlin is first named in Plaintiff's complaint. Doc. 1, p. 5. The complaint states that Warden McLaughlin was informed via "in house mail" that SOPs were "being violated by orderlies being allowed to serve trays" improperly. *Id.* These allegations are not raised in either grievance number 193961 or 195131. Plaintiff thus failed to inform prison officials of McLaughlin's participation in the matter, although McLaughlin's identity was known and reasonably available to Plaintiff at the time of his grievances. Because Plaintiff did not pursue administrative remedies as to any claims against McLaughlin, his claims against Defendant McLaughlin are subject to dismissal.

2. Claims against Defendant Lockett

The record shows that Plaintiff filed a timely grievance and appeal as to his claims against Defendant Lockett, but that the Warden and the Central Office denied his grievance and appeal because Plaintiff attached more than one additional page to his grievance. This denial was improper under the plain language of the governing Standard Operating Procedures.

Plaintiff acknowledges that he attached two documents to his original grievance, number 193961, based on his counselor's advice that the attachments were acceptable "to help state my case and to help make my grievance more comprehensible." Doc. 23, p. 2. Grievance number 193961 was denied on April 10th, 2015, due to Plaintiff attaching the two pages "in violation of policy." Doc. 23-2, p. 2. On April 17th, 2015, Plaintiff appealed his denied grievance on the grounds he was informed he could attach two forms to his grievance. Doc. 23-3, p. 2. Plaintiff also requested that his grievance proceed forward with only the written statement by Richard Patterson. *Id.*

Although the denial of this appeal is not in the record, Plaintiff states that the appeal was denied and that he filed a second grievance, number 195131. Doc. 23, p. 3; Doc. 23-4, p, 2. In this

8

grievance, filed April 20th, 2015, Plaintiff alleged the same facts as he did in his first grievance and acknowledged that this grievance was not filed in the appropriate ten-day period. Doc. 23-4, p. 2. Plaintiff explained that the grievance was late because his first grievance had been denied and he had been advised to resubmit his grievance. *Id.* Grievance number 195131 was denied on April 30th, 2015, as untimely. *Id.* at 4. Plaintiff appealed this denial on May 11th, 2015, and the Central Office denied the appeal on June 4th, 2015. Because the facts alleged by Plaintiff, accepted as true, do not establish that Plaintiff failed to exhaust his claim, the Court must proceed to step 2 of the *Turner* analysis.

At step two of the *Turner* analysis, the Court must weigh the evidence and make findings of fact. In support of Defendant Lockett's Motion to Dismiss, Defendant presents the following evidence: Affidavit of Lachaka McKenzie (Doc. 19-2); Georgia DOC SOP IIB05-0001 regarding the Statewide Grievance Procedure during the time applicable to this case (Doc. 19-3); Grievance Number 193961-5 and associated documents (Doc. 19-4, pp. 3-9); Grievance Number 195131-5 (Doc. 19-4, pp. 9-13); and the Affidavit of Curtis Jefferies (Doc. 25-1). Defendants admit that Plaintiff's grievance number 193961 was timely filed, but contend that it contained an additional attachment in violation of the administrative process. Defendants argue that grievance number 195131 was untimely filed.

Lachaka McKenzie is employed by the Georgia DOC as the Grievance Counselor at MPS. Doc. 19-2, p. 2. Her duties involve ensuring that grievance procedures are available to all inmates and are handled according to the Standard Operating Procedures (SOP). *Id.* at 2. The SOP provides that at the first step of the grievance procedure an "offender's complaint and relief must be stated legibly and in writing on the provided Grievance Form and on one additional page attached to the Grievance Form." Doc. 19-3, p. 8. The SOP further states that "[a]ny extra pages

9

and any writing on the back side of a page **will not be considered**." *Id.* at 8 (emphasis added).

The SOP instructs that the Grievance Form must be filed within ten days from the date the offender knew, or should have known, of the facts giving rise to the grievance. *Id.* Every offender must have the grievance policy orally explained to him and must be presented with a copy of the Orientation Handbook for Offenders. *Id.* at 5. Ms. McKenzie confirmed that the entire SOP is available for the inmates to review in the law library of each GDC facility. Aff. of Lachaka McKenzie, Doc. 19-2, pg 2.

In denying Plaintiff's grievance because of the additional attachment, Warden McLaughlin failed to follow the procedures outlined in the SOP. Although the SOP states that only one page may be attached to a grievance form, there is nothing to indicate that additional attachments will cause the grievance to be rejected as improperly filed.[1] Instead, the SOP states that any additional pages "will not be considered." *Id.* The plain language of the SOP indicates that the proper procedure is to consider the grievance without the additional attachments, as Plaintiff correctly requested in his appeal. By filing grievance 193961 and an appeal from the Warden's improper rejection of the grievance, Plaintiff properly took each step within the administrative process, as the PLRA requires. The prison's refusal to consider a properly filed grievance, based on a misinterpretation of its own written policies, cannot provide a basis for dismissal of Plaintiff's claims.

## CONCLUSION

Because Plaintiff failed to exhaust his available administrative remedies as to Defendant

---

[1] The court notes that past DOC SOPs have stated, "only one (1) additional page will be attached by the inmate to the formal grievance form. Formal grievances with additional pages will be rejected…." *Bishop v. McLaughlin*, No. 5:11-CV-107 MTT, 2012 WL 1029499, at *2 (M.D. Ga. Mar. 26, 2012). This grievance procedure was replaced on December 12th, 2012 when the current SOP went into effect. Aff. of Lachaka McKenzie, Doc. 19-2, p. 3.

McLaughlin, it is **RECOMMENDED** that McLaughlin's Motion to Dismiss (Doc. 19) be **GRANTED**. It is **RECOMMENDED**, however, that Defendant Lockett's Motion (Doc. 26) be **DENIED**, because the record shows that Plaintiff exhausted his remedies as to those claims. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 27th day of September, 2016.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge